**UNITED STATES of America, Appellee,**

v.

**Luther Amos BEAHM, Appellant.**

**No. 80–5127.**

United States Court of Appeals, Fourth Circuit.

Argued Jan. 9, 1981.

Decided Nov. 18, 1981.

Rehearing and Rehearing En Banc Denied Feb. 19, 1982.

John C. Hale, Richmond, Va. (Joseph L. Duvall, Fairfax, Va., on brief) for appellant.

Paula P. Newett, Asst. U. S. Atty. (Justin W. Williams, U. S. Atty., Alexandria, Va., Kevin J. Harrington, third-year law student, on brief) for appellee.

Before WINTER, WIDENER and SPROUSE, Circuit Judges.

WINTER, Circuit Judge:

Luther Beahm appeals his conviction by a federal jury on two counts of taking indecent liberties with children on a United States military installation in Virginia.[1] He contends that the district court improperly permitted the introduction of prejudicial evidence and erroneously instructed the jury. We agree, in part, and therefore reverse the judgment of conviction and award a new trial.

## I.

Two boys, ages nine and twelve, were fishing in a pond on Fort Belvoir, Virginia, on August 19, 1979, when they were each approached by a man subsequently identified as the defendant. The man dismounted from a blue motorcycle, took off his helmet, and attempted to talk to one of them about fishing. He alternately sat close by each of them and fondled their genitals. He left after approximately ten minutes.

One of the youths related the incident to his father, an Army sergeant, on August 25. The sergeant and his son, driving around the same area in which the incident occurred, observed a man on a blue motorcycle whom the son identified as the actor in the incident. The sergeant copied the license number of the motorcycle and, when traced by the FBI, it was found to belong to Beahm's girlfriend, with whom he was living. After an investigation was initiated,

---

1. Beahm was found to have twice violated Virginia state law, Va.Code § 18.2–370(2). Those same acts become federal crimes by reason of the Assimilative Crimes Act, codified at 18 U.S.C. § 13, since they occurred on a federal military reservation.

an FBI agent sought the defendant at the residence where Beahm and his girlfriend were living, and, when no one responded to his knock, the agent left a note requesting Beahm to contact him. Beahm found the note that same day, September 7, threw it in a trash can, and departed immediately for Florida after packing a bag and withdrawing $200 from a joint account. He did not advise his girlfriend of his departure, but two weeks later, in a telephone conversation, she advised him that if he was innocent he should return. He followed her advice, and was subsequently interrogated, indicted, and convicted. He was sentenced to three years imprisonment on each of two counts, the sentences to run concurrently.

Before trial, the government filed its notice of intent to use evidence of two prior convictions of defendant for the purpose of impeachment in the event defendant testified. Such notice was required by Federal Rule of Evidence 609(b) because one of the convictions was more than ten years old. The notice explicitly referred to Rule 609(b), and listed two Maryland convictions, one for "unnatural and perverted sexual practices," nine and one-half years old, the other for sodomy, over eleven years old. Counsel for defendant filed a written objection to admissibility of this evidence, arguing that it was not permissible under Rule 609 and that even if it were, its probative value would be outweighed by its prejudicial effect because prior convictions for similar sexual offenses would inflame the jury. Although the district court refused to rule on the objection before the evidence was offered, it nonetheless clearly indicated its predisposition to admit the evidence, stating: I'm fully of the opinion that if it is of similar crimes, similar offenses, they may be introduced, and I think the Fourth Circuit has ruled on it in quite a number of cases, beginning with an old case way back."

At trial, the government introduced the testimony of the two offended youths, of the father of one of them, and of two other young males who testified that Beahm had committed similar acts on them several years previously. The latter evidence was admitted over Beahm's objection.

When the government's case was completed, the defendant took the stand in his own behalf, and he was questioned about his prior convictions. In light of the district court's pre-trial decision regarding this evidence, counsel attempted to limit the prejudice flowing from admission of the convictions for impeachment purposes by restricting cross-examination to the fact that defendant had two previous felony convictions, barring inquiry into the nature of those convictions. The district court ruled that the government could inquire into the nature of the offenses for which defendant was convicted, although it did not allow the government to delve further into the facts and circumstances of each case. Although the district court had earlier recognized that it would be required to weigh the prejudice to defendant against the right of the government to introduce the evidence, it failed to make any specific findings on the probative value of the convictions for purposes of impeachment; it relied instead on case law to support its ruling, citing *Spencer v. Texas*, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967), *United States v. Boyce*, 611 F.2d 530 (4 Cir. 1979), and *Gardner v. Paderick*, 566 F.2d 1172 (4 Cir. 1977) (unpublished).

## II.

■ We consider first the admissibility of the testimony of two male witnesses that Beahm had made sexual advances to them within three years prior to the offenses charged. The district court admitted this evidence under Federal Rule of Evidence 404(b) as tending to prove Beahm's "intent, knowledge, or absence of mistake",[2] and

---

**2.** The pertinent language of Rule 404(b) is:

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

instructed the jury that the evidence might be considered only for that purpose. In this connection, it is significant that defendant was sharply contesting the sufficiency of the government's proof of lascivious intent with respect to the crimes charged.

We think that the district court did not err in admitting this evidence of other crimes, wrongs or acts, especially since defendant was insisting that under the Virginia statute the burden was on the government to show that defendant's acts were performed with lascivious intent and did not occur by accident. Because intent was a key issue in the case, the threshold requirement that evidence of prior acts be relevant to an issue other than the defendant's character was fully met. *See United States v. Beechum*, 582 F.2d 898, 911–16 (5 Cir.), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979); *United States v. DiZenzo*, 500 F.2d 263, 265 (4 Cir. 1974); *United States v. Mastrotaro*, 455 F.2d 802, 803 (4 Cir.), *cert. denied*, 406 U.S. 967, 92 S.Ct. 2411, 32 L.Ed.2d 666 (1972).

The only other limitation on use of prior acts evidence is contained in Federal Rules of Evidence 403, that the probative value of the challenged evidence must outweigh its prejudicial effect. But we cannot say that the district court abused its discretion in balancing these conflicting considerations. *See United States v. Masters*, 622 F.2d 83 (4 Cir. 1980). The probative value of the prior episodes is attested by their similarity to the offense charged and their temporal proximity to the crimes with which the defendant is charged. *See United States v. Beechum, supra.* Undoubtedly this evidence had some inflammatory effect on the jury, but the district court could well conclude that its probative value outweighed this prejudice when defendant chose to make intent an issue.

### III.

We view the evidence of prior convictions differently. In our opinion, the district court committed reversible error in admitting evidence of the eleven-year-old sodomy conviction. At the outset it should be stressed that the government offered the evidence of prior convictions solely for impeachment under Rule 609(b). It makes no claim that the evidence was admissible under Rule 404(b), the rule discussed in the prior section of this opinion.

■ Our decision in *United States v. Cavender*, 578 F.2d 528 (4 Cir. 1978), is in point and controlling on the subject. *Cavender* holds that Rule 609(b) [3] "made it crystalline that the District Court was only to depart from the prohibition against the use for impeachment purposes of convictions more than ten years old 'very rarely and only in exceptional circumstances.' " 578 F.2d at 530, citing the applicable legislative history. *Cavender* also holds that the Rule requires

Of course the permissive language of Rule 404(b) is limited by the provisions of Rule 403 to the effect that although relevant, evidence may be excluded if its probative value is outweighed by its prejudicial effect.

**3.** Federal Rule of Evidence 609 provides in pertinent part:

> RULE 609. Impeachment by Evidence of Conviction of Crime
> (a) General rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2)

involved dishonesty or false statement, regardless of the punishment.
> (b) Time limit. Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than 10 years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

the district court before admitting evidence of a conviction to find that the probative value of the conviction "substantially" outweighs its prejudicial effect, and the district court is *required* to support its findings with "specific facts and circumstances." 578 F.2d at 531. It follows that when the government seeks to use evidence of a conviction more than ten years old for purposes of impeachment, it bears the burden of establishing specific, or articulated, facts and circumstances that support the probative value of the conviction such that it substantially outweighs its prejudicial impact.

■ Here, as in *Cavender*, the district court not only failed to make any express finding that the probative value *substantially* outweighed the prejudicial effect of the evidence, but the record is silent both as to any specific facts supporting the probative value of the conviction for impeachment purposes, or showing how its probative value substantially outweighs its prejudicial effect. The district court supported its ruling with case law, not with facts, and at best can only be said to have found implicitly that the probative value of the evidence outweighed the prejudice, an insufficient finding under Rule 609(b). As *Cavender* makes clear, this stringent standard for district court findings under the Rule is necessary because the congressional purpose was to prohibit the admission of convictions more than ten years old, permitting exceptions to the prohibition "very rarely." 578 F.2d at 531.

Despite the government's argument to the contrary, we think it immaterial that the conviction at issue in *Cavender* was twenty-five years old and the conviction

here was "only" eleven years old. The Rule provides for no distinctions between convictions of more recent "vintage" and older ones. Such distinctions would vitiate the very purpose of the Rule, which is to settle the question of how old a conviction must be for its admission presumptively to prejudice a defendant. Any conviction at least ten years old presumptively prejudices a defendant under the Rule, and the government failed to meet the heavy burden of rebutting the presumption in this case.

The presumption is certainly not rebutted by the fact that the conviction was for the same type offense for which the defendant stood accused. The district court apparently relied on this identity. Our opinion in *United States v. Boyce*, 611 F.2d 530 (4 Cir. 1979), however, cited by the district court, specifically notes that:

> In the special case where the prior conviction is for the same offense as that for which the defendant is being tried, the trial court generally will not permit the Government to prove the nature of the offense on the ground that to do so would amount to unfair prejudice. *See United States v. Wilson*, (4th Cir. 1977) 556 F.2d 1177, 1178.

611 F.2d at 530 n.1. Significantly, *Boyce* involved the admission of evidence under Rule 609(a),[4] so that its statement about the "unfair prejudice" to the defendant resulting from admission of conviction of the same offense applies *a fortiori* to a case under Rule 609(b).[5]

Admission of evidence of a similar offense often does little to impeach the credibility of a testifying defendant while undoubtedly prejudicing him.[6] The jury, de-

---

4. The text of Rule 609(a) is reproduced in footnote 3, *supra*. The admission of evidence under Rule 609(a) requires a finding that the probative value of the conviction for impeachment purposes outweighs the prejudicial effect to the defendant. Under Rule 609(b), the district court must find that the probative value *substantially* outweighs the prejudicial effect, and support the finding with specific facts and circumstances. *See generally United States v. Cavender*, 578 F.2d at 532 n.9.

5. The defendant in *Boyce* was impeached with convictions of criminal offenses different from the offense for which he was charged, so the court ruled that admission of the convictions was not plain error.

6. It is important to distinguish the determination of admissibility of a prior crime for purposes of impeachment under Rule 609 from the determination of admissibility for purposes of proving motive, opportunity, intent, knowledge and the like under Rule 404(b). Prior conviction of a similar offense can be highly probative

spite limiting instructions, can hardly avoid drawing the inference that the past conviction suggests some probability that defendant committed the similar offense for which he is currently charged. The generally accepted view, therefore, is that evidence of similar offenses for impeachment purposes under Rule 609 should be admitted sparingly if at all. *See United States v. Mahone,* 537 F.2d 922, 929 (7 Cir.), *cert. denied,* 429 U.S. 1025, 97 S.Ct. 646, 50 L.Ed.2d 627 (1976); *Gordon v. United States,* 383 F.2d 936, 940 (D.C.Cir.1967), *cert. denied,* 390 U.S. 1029, 88 S.Ct. 1421, 20 L.Ed.2d 287 (1968) (Burger, J.) (pre-Federal Rule case, but adopted by *Mahone* court after enactment of Federal Rules). Where as here the offense sought to be admitted against defendant had little bearing on his propensity to tell the truth, the district court should have recognized that the substantial likelihood of prejudice outweighed the minimal impeachment value of the evidence, and refused to admit the evidence, *e. g., United States v. Puco,* 453 F.2d 539, 542–544 (2 Cir. 1971), *cert. denied,* 414 U.S. 844, 94 S.Ct. 106, 38 L.Ed.2d 82 (1972), or at the very least limited disclosure to the fact of conviction without revealing its nature, *see United States v. Wilson,* 556 F.2d 1177, 1178 (4 Cir. 1977), *United States v. Garber,* 471 F.2d 212, 218 (5 Cir. 1972) (Godbold, J., concurring).

Since evidence of *any* similar offense should be admitted only rarely, a similar conviction already presumptively barred from admission by Rule 609(b) should be admitted even more rarely. Without a finding that "specific facts and circumstances" dictate otherwise, this rare occasion cannot be presumed to be present in this case.

## IV.

■ The admission of defendant's other conviction, nine and one-half years old, for the purpose of impeachment was also re-

versible error on this record. We think that it is doubtful if this conviction could ever serve as the basis for impeachment. It was remote in time, almost falling within the presumptive bar of Rule 609(b). It was for a similar offense, an odious one likely to inflame the jury and thus prejudice defendant. Moreover, it was an offense that had minimal if any bearing on the likelihood that defendant would testify truthfully. But in any event, defendant was denied the safeguards of Rule 609(a). The district court failed to determine as a prerequisite to use of the evidence that the probative value of the conviction for impeachment purposes outweighed its prejudicial effect to the defendant as required by Rule 609(a). Indeed, the district court failed to distinguish between the eleven-year-old conviction presumptively barred by Rule 609(b) and the more recent conviction admissible under certain circumstances pursuant to Rule 609(a). From its citation of case law the district court merely ruled that there was no constitutional prohibition against the admission of both convictions, *see Spencer v. Texas,* 385 U.S. at 563, 87 S.Ct. at 653, and that no *plain* error would result from their admission, *United States v. Boyce,* 611 F.2d at 530–31 (no objection raised at trial).

## V.

We also think that there was reversible error in the instruction to the jury about flight. We consider this issue only because of the likelihood that it will arise again on retrial. The district court's instruction permitted the jury to consider defendant's flight "immediately after ... the commencement of an investigation of a crime" in determining guilt or innocence.

■ As we stated in *United States v. Foutz,* 540 F.2d 733 (4 Cir. 1976): "The inference that one who flees from the law is motivated by consciousness of guilt is weak at best ...." *Id.* at 740. Such an infer-

---

of intent. For impeachment purposes, however, the most probative sort of prior conviction is for an offense that indicates a lack of veracity, such as fraud, forgery or perjury. *See*

3A J. Wigmore, Evidence §§ 926, 982 (Chadbourn rev. ed. 1970); 3J Weinstein & M. Berger, Weinstein's Evidence ¶ 609[02].

ence would be completely unfounded where a defendant flees after "commencement of an investigation" unrelated to the crime charged, or of which the defendant was unaware.

■ In *Foutz*, the defendant knew he was wanted for arrest for the bank robberies for which he was charged, although there was no evidence that he fled the jurisdiction. In this case, there was ample evidence that defendant "fled" the jurisdiction, but no evidence that he was aware that he was the subject of a criminal investigation. His flight did not occur until three weeks after the commission of the crime. He did receive a note from the FBI on the day he "fled," but nothing in the note suggests that the FBI wanted to arrest him or that it even suspected him. Nor did the note indicate that the incident with the children was involved. In essence, the jury was allowed to draw an inference of ultimate guilt from flight based upon an inference that defendant felt guilty after receiving a note from the FBI, and this was error.

There was nothing in the district court's other instructions that would "cure" the error as suggested by the government in its citation of *Cupp v. Naughten*, 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973), which holds that instructions must be read in their entirety. The proper instruction would have allowed the jury to consider the defendant's flight immediately after the commission of a crime or after he was *accused* of a crime. Under some circumstances "commencement of an investigation" could be equated with accusation, but not here. The FBI had not accused defendant of anything at the time of his "flight," much less this particular crime. In our view, the fact that there was "only one set of crimes and one investigation in evidence" does little to save the instruction. Otherwise, defendant would bear an unconscionable burden of offering not only an innocent explanation

for his departure but guilty ones as well in order to dispel the inference to which the government would apparently be entitled that an investigation calling upon defendant could have but one purpose, namely, his apprehension for the crime for which he is ultimately charged. If the government wishes to offer evidence of flight to demonstrate guilt, it must ensure that each link in the chain of inferences leading to that conclusion is sturdily supported. *See United States v. Myers*, 550 F.2d 1036, 1049 (5 Cir. 1977), *cert. denied*, 439 U.S. 847, 99 S.Ct. 147, 58 L.Ed.2d 149 (1978). The government's failure to substantiate adequately the inference that defendant was aware he was wanted for the crime renders the instruction given the jury in this case irretrievably erroneous.

Reversed and remanded for new trial.

WIDENER, Circuit Judge, dissenting:

I respectfully dissent.

The majority has reversed this conviction and ordered a new trial on the basis of three errors, two involving the admission of prior convictions of the defendant and one involving a jury instruction regarding flight by the defendant. I would affirm.

I

The principal question involves the elicitation during cross examination of the defendant that he had an eleven year old conviction for sodomy and a nine year old conviction for unnatural sexual practices.[1] The majority has found that the elicitation should not have been allowed because the district court failed to make an explicit finding, pursuant to Rule 609(b) of the Federal Rules of Evidence, that the probative value of the convictions for impeachment purposes outweighed their prejudicial effect. The opinion considers the propriety of introducing the convictions only in the con-

---

1. No abstract of the conviction for unnatural sexual practices is in the record, yet it is plain from the transcript that it was a crime similar to that with which the defendant was charged, and that everybody connected with the trial knew all about that conviction. Both previous convictions were described by the defense attorney in arguing for their inadmissibility as "[t]hey're sex related offenses, men on men, and they would be related to this," referring to the charges being tried.

text of impeachment of the defendant's credibility as a witness. The court says:

> At the outset it should be stressed that the government offered the evidence of prior convictions solely for impeachment under Rule 609(b). It makes no claim that the evidence was admissible under Rule 404(b) . . .
> (At 417).

The court reiterates:

> It is important to distinguish the determination of admissibility of a prior crime for purposes of impeachment under Rule 609 from the determination of admissibility for purposes of proving motive, intent, knowledge and the like under Rule 404(b). Prior conviction of a similar offense can be highly probative of intent. (At 418, n. 6).

The majority thus declines to consider whether these convictions were admissible to prove intent, even though it admits that a prior conviction can be highly probative in considering intent. The basis for the decision is the government's offering proof of the convictions for impeachment rather than intent. I see no reason for limiting our review to impeachment. It is well established in the law of evidence that evidence which cannot be introduced for one purpose may be introduced for another. The majority here has turned that maxim around and held that evidence which cannot be introduced for a given reason—here, impeachment—cannot be introduced at all even though admissible for another reason. Obviously, the latter proposition contradicts the former.

The majority's reliance on the government's failure, both at trial and here, to assert that the prior conviction would be admissible to show intent is hardly reason to excuse our consideration of the question. It is a fundamental principle of judicial review that trial court decisions should not be reversed if the court reached the right decision but for the wrong reasons. *Securi-*

*ties & Exchange Commission v. Chenery,* 318 U.S. 80, 88, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1942); *Helvering v. Gowran,* 302 U.S. 238, 245, 58 S.Ct. 154, 157–58, 82 L.Ed. 224 (1937). Here, the majority's refusal to consider whether the conviction would be admissible as evidence of intent means the court has failed to consider whether the *Chenery* principle applies.

I believe that, regardless of whether the convictions should have been admitted for impeachment, they were admissible to demonstrate motive and intent under Rule 404(b) and thus there was no reversible error.[1A] It is well recognized that, in prosecution for sex crimes, evidence of prior like sexual misconduct with other persons is admissible if there is an issue of whether the accused acted with requisite intent.[2] The United States Court of Appeals for the District of Columbia Circuit has stated the rule from the better reasoned decisions:

> The theory of this exception [to the general rule against prior acts evidence] is that as the mental disposition of the accused, at the time of the act charged, is relevant, evidence that at some prior time he was similarly disposed is also relevant. Evidence of prior acts between the same parties is admissible, therefore, as showing a disposition to commit the act charged; the probabilities being that the emotional predisposition or passion will continue. The question has not been decided in the District of Columbia whether this exception to the general rule should include sex offenses committed by the accused upon other victims than the one named in the indictment. Logically the exception would seem to include such other offenses. The emotional predisposition or passion involved in raping one little girl would seem to be the same as that involved in raping another. Evidence of such a crime committed upon one little girl shows a disposition to commit the

**1A.** The majority found error in admission of the eleven year old sodomy conviction because Rule 609(b) greatly restricts introduction of convictions older than 10 years. The 10 year time limit, however, does not apply to evidence introduced under Rule 404(b).

**2.** As the majority sets out in its opinion, "intent was a key issue" in this case. (P. 417)

same crime upon another, and the probability that the emotional predisposition or passion will continue is as great in one case as the other.

*Bracey v. United States,* 142 F.2d 85, 88 (D.C.Cir.), cert. denied, 322 U.S. 762, 64 S.Ct. 1274, 88 L.Ed. 1589 (1944); see 1 *Wharton's Criminal Evidence,* § 250 (13th ed. 1972); 2 *Wigmore on Evidence* §§ 357–60 (Chadbourn rev. 1979). See also *United States v. Woods,* 484 F.2d 127 (4th Cir. 1973). There is no doubt that this policy still holds under the Federal Rules of Evidence. Rule 404(b) allows introduction of evidence of other crimes, wrongs or acts if that evidence is proof of motive or intent.[3]

The majority even recognized the probative value of evidence of prior acts under the facts of this case when it found no error in admitting the testimony of two boys who claimed to have had similar experiences with the defendant. (P. 416–417). In neither instance had the defendant been convicted or even charged with sexual misconduct. Nevertheless, the majority found the evidence probative and reliable. By contrast, the evidence with which we are concerned at this point is that of prior convictions, rendered in courts of law, for similar sex crimes. It is anomolous that the court would allow the uncorroborated testimony of two boys as to prior acts and yet not admit evidence of convictions for similar crimes. Certainly the latter is far more reliable than the former. The majority thus admits the less probative evidence and excludes the more probative. I do not think the Federal Rules of Evidence were intended to be applied in that manner.

## II

Finally, the majority finds reversible error in the court's instruction regarding flight following commission of a crime. It bases its ruling on its finding that there was:

"... no evidence that he [Beahm] was aware that he was the subject of a criminal investigation." (P. 420).

and reiterates the reason for its finding in the last sentence of the opinion:

"The government's failure to substantiate adequately the inference that defendant was aware he was wanted for the crime renders the instruction given the jury in this case irretrievably erroneous." (P. 420).

Six days after the incident, Beahm was accosted by the father of one of the victims and was told by the father that he (the father) was looking for the man who had made the assault on his son, and that the man he was looking for rode a motorcycle like the one Beahm was riding. Only a short time after that, 13 days later, Beahm was left the note by the F.B.I. agent to call that agent. Beahm found the note, partially tore it up, and threw it in the trash. He immediately left his girlfriend's home, where he had been living for more than three years, and without a word to anyone, including the girlfriend, withdrew $200 from their joint bank account and went to Florida, with little or no baggage, on the girlfriend's motorcycle. He had an obviously responsible job as Production Manager of a lithograph company, yet he did not even notify his employer of his leaving, and simply walked out on his job.

If these facts are not sufficient to support an inference by a jury "that defendant was aware he was wanted for the crime," I find it hard to easily imagine a set of facts which would support such an inference.

---

**3.** There is no indication in the legislative history or the various committee reports that Congress meant to change, or even considered changing, the policy on use of prior acts evidence in sex crimes. Rather, it appears that Rule 404(b) is a codification without change of longstanding evidence principles. See S. Saltzburg & K. Redden, *Federal Rules of Evidence Manual,* 129–34 (2d ed. 1977); 2 *Weinstein's Evidence,* ¶¶ 404[08], 404[12] (1981).