35 F.3d 558
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Willie VICK, a/k/a John Peebles, a/k/a John Pebbles,
Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Joyce Mae Stancil, Defendant-Appellant.
 Nos. 93-5462, 93-5805.
 United States Court of Appeals, Fourth Circuit.
 Argued June 6, 1994.
Decided Sept. 14, 1994.
 
 Appeals from the United States District Court for the Eastern District of North Carolina, at Raleigh. Terrence W. Boyle, District Judge. (CR-92-113)
 Lewis Alston Thompson, III, Warrenton, NC; Michael W. Patrick, Haywood, Denny, Miller, Johnson, Sessoms & Patrick, Chapel Hill, NC, for appellants.
 David Paul Folmar, Jr., Asst. U.S. Atty. Raleigh, NC, for appellee.
 Elizabeth Manton, Federal Public Defender, Raleigh, NC, for appellant Vick.
 J. Douglas McCullough, United States Attorney, Raleigh, NC, for appellee.
 E.D.N.C.
 AFFIRMED.
 Before RUSSELL and WILLIAMS, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Willie Vick and Joyce Mae Stancil challenge judgments entered on verdicts of a jury convicting them of criminal offenses committed in connection with a bank robbery. Vick was convicted of one count of bank robbery in violation of 18 U.S.C. Sec. 2113(a) & (d) and one count of use of a firearm in violation of 18 U.S.C. Sec. 924(c). Stancil was convicted of one count of bank robbery and aiding and abetting an armed bank robbery in violation of 18 U.S.C. Sec. 2113(a) & (d) and 18 U.S.C. Sec. 2.
 
 
 2
 Vick asserts that the district court gave an improper jury instruction on the issue of flight and erred in other rulings. Stancil claims that the prosecution did not present evidence that was sufficient to support her conviction. We affirm both convictions because we find that the district court committed no error with respect to Vick's trial and because we find that a rational jury could have found Stancil guilty beyond a reasonable doubt.
 
 
 3
 * The prosecution introduced evidence that a man wearing a black ski mask and carrying a silver revolver in his hand robbed the bank, taking away bait bills and mutilated money in a pillow case. He fled the bank in an old black and white Chevrolet. A police officer testified that the day after the robbery he spotted a Nissan that he believed matched a witness's description of the switch car that the robber used after abandoning the Chevrolet get-away car. When Vick saw the police car's blue lights, he fled. Police arrested him after a prolonged chase that ended when Vick crashed the Nissan into a fire hydrant. He ran into a gas station storage room where the officers arrested him.
 
 
 4
 The district court instructed the jury that flight, if proved, was a circumstance the jury could consider as showing consciousness of guilt. But it cautioned the jury that there are many reasons consistent with innocence that could cause a person to flee, such as fear of law enforcement or a reluctance to be involved in an investigation. Vick objected to the instruction because his flight did not occur immediately after the robbery.
 
 
 5
 Vick also argues that he was improperly denied an opportunity to counter the inference of consciousness of guilt with a suggestion that he fled police due to common fears that young black men have of police. Defense counsel told the court at trial that the well-publicized videotaped beating of Rodney King by police in Los Angeles supported an assertion that Vick fled due to a natural tendency to dread contact with police.
 
 
 6
 The standard for reviewing the jury instruction that Vick challenges is whether the district court abused its discretion. United States v. Russell, 971 F.2d 1098, 1107 (4th Cir.1992). It is improper to give an instruction on flight when no evidence exists either of actual flight or of the defendant's knowledge that law enforcement authorities were pursuing him. United States v. Beahm, 664 F.2d 414, 419-20 (4th Cir.1981) (no knowledge); United States v. Foutz, 540 F.2d 733, 739-40 (4th Cir.1976) (no actual flight).
 
 
 7
 The evidence disclosed that Vick knew the police were pursuing him when he fled. The fact that his flight occurred the day after the robbery was a circumstance the jury could consider, but this lapse of time did not make the instruction inappropriate. The defense presented no evidence that Vick harbored fears based on the King case. The argument that defense counsel sought to make was not supported by the evidence, and the district court did not abuse its discretion in refusing to allow the defense to pursue this argument. See United States v. Pool, 660 F.2d 547, 561 (5th Cir.1981). Moreover, the district court's instruction about innocent reasons for flight adequately cautioned the jury that an inference of guilt was not the sole inference they could draw.
 
 
 8
 Vick also claims that the district court erred in permitting an FBI agent to testify during the government's case about an interview with Vick's codefendant, Stancil. The agent testified, without objection, that during this interview Stancil offered as an alibi for Vick that he was at her apartment during the time of the robbery. After the government rested, one of Vick's witnesses provided a conflicting alibi for Vick. The conflict in the alibis, Vick says, undermined his credibility. Because Stancil did not testify, Vick claims that the agent's testimony violated Bruton v. United States, 391 U.S. 123 (1968).
 
 
 9
 The rule of Bruton applies only when the out-of-court statement of a codefendant who does not testify directly and expressly incriminates the accused. Richardson v. Marsh, 481 U.S. 200, 208-09 (1987); United States v. Campbell, 935 F.2d 39, 43 (4th Cir.1991). Because Stancil's statement did not directly or expressly incriminate Vick, his reliance on Bruton is misplaced. The district court did not err by admitting the agent's testimony.
 
 
 10
 Vick argues that the district court erred by not instructing the jury on the defense of alibi. The record reveals, however, that the court did instruct the jury on this defense using the precise words that defense counsel had requested.
 
 II
 
 11
 Stancil asserts that the district court erred in declining to grant her motion for judgment of acquittal. Fed.R.Crim.P. 29. She argues that the prosecution failed to present evidence that would have supported her conviction.
 
 
 12
 The standard of review in determining the sufficiency of evidence necessary to sustain a conviction is whether, viewed in the light most favorable to the government, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir.1982).
 
 
 13
 A witness testified that about 8:00 a.m. on the morning of the robbery two cars were parked in a lot at the Brafferton Apartments. One was a black and white Chevrolet Impala, and the other was a blue Nissan. A witness saw a woman wearing some sort of brightly colored hat in the Nissan. At 9:15 a.m., the Impala cut off a witness in the bank parking lot. A black woman wearing a pink scarf around her head was driving. The masked gunman got into the Impala. A witness noted the license plate. Within minutes officers found the Impala in the Brafferton parking lot. A black ski mask was found inside the car. The Impala had been stolen.
 
 
 14
 The next day police apprehended Vick after he drove the blue Nissan in a high-speed chase. Officers recovered a sum of money, including a bait bill from the bank, in a storage room where Vick sought to hide after he crashed the Nissan. A witness testified the Nissan was similar to the one she saw in the morning at the Brafferton Apartments when a woman with a brightly colored hat was sitting in it. The Nissan had been stolen. It contained various papers naming Vick, Joyce Stancil, and Sheila Stancil, ammunition for a .32 caliber revolver, and a pink scarf. In the apartment occupied by Vick and Stancil, the police found a .32 caliber silver revolver and a large sum of money. Stancil later acknowledged that Vick was her boyfriend and they lived in the apartment. She also provided a false alibi for Vick.
 
 
 15
 Although this evidence is circumstantial, we conclude that a rational jury could find Stancil guilty beyond a reasonable doubt when the evidence is viewed in the light most favorable to the government.
 
 
 16
 The judgments are affirmed.
 
 AFFIRMED